[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage returnable to the Waterbury Superior Court.
The parties were marriage at Hartford, Connecticut on June 16, 1973. They have resided continuously in this state for more than one year prior to the commencement of this action.
There are no minor children issue of this marriage.
The evidence presented at trial has established the allegation that the marriage of the parties has broken down irretrievably. Judgment may enter dissolving, the marriage on that ground.
The court as considered the criteria set forth in Sections46b-81 and 46b-82, Conn. General Statutes, and related statutes in reaching, the decisions reflected in the orders which follow.
This is a twenty-five year marriage, during which two children were born to the parties. Both are now adults.
The plaintiff was born on May 11, 1934. He is in generally good health. He retired from the Waterbury Police Department in 1997 at the age of 62 after 31 years with that force. Had he wished to do so, he could have remained so employed until age 70, but he concluded that such work was for younger men and retired with a pension which currently pays $686.00 He also receives a Social Security benefit in the amount of $36.50 per week. Those are his only reported sources of income which, after allowable deductions net him approximately $565.20 per week.
The defendant is 59 years old and has in recent years CT Page 8751 experienced some serious health problems including a stroke suffered in 1994 which incapacitated her for several months. She subsequently recovered sufficiently to resume her employment on a part time basis in 1997. She is employed as a marketing interviewer by Mark Facey Co. and currently earns approximately $350.00 per week which nets her approximately $288.00 per week. Prior to the marriage, the defendant worked for Northeast utilities and was a billing clerk there for 16 years. She brought to the marriage a savings account of between $30,000.00 and $40,000.00, according to her testimony. She testified that the plaintiff, at the time of the marriage, had no appreciable assets, no savings, and was required to pay support and alimony to an ex-wife. The defendant paid the downpayment, the taxes and the mortgage when the parties bought their first home for approximately $27,500.00.
The defendant stopped working after the birth of her two daughters in 1974 and 1976.
The defendant's father gave considerable financial help the family over 24 years. The defendant estimated the total amount to be somewhere between $50,000.00 and $100,000.00. That included approximately $30,000.00 he gave to the parties in 1993 for the education of his two granddaughters. In late 1997 or early 1998, the defendant's father died and he left her an inheritance comprised primarily of several annuities and a life insurance policy recited in her financial affidavit.
The testimony indicated that over the years the plaintiff spent more and more time and money on his hobby — the restoration of antique automobiles. He also purchase a retirement property in Virginia without the defendant's knowledge or consent — although she had previously discussed making such an acquisition some day. The plaintiff was very secretive about his personal finances and transactions and, according to the defendant wanted little to do with her personally, sexually and socially as the marriage went on. At one point in the marriage the plaintiff conceded that he had cosigned on a loan for his ex-wife after initially claiming that his signature had been forced.
While each testified that communications waned and they grew apart, there was one event which made their relationship come to an end. In December, 1996 their daughter announced plans to marry the following summer in Virginia. The plaintiff talked her into a Connecticut wedding and the plans were made. On the day of the CT Page 8752 wedding, without any advance notice or discussion, the plaintiff refused to participate in his daughter's wedding ceremony because one of the wedding party was a black male. The defendant attended but was too embarrassed and distressed to walk down the aisle or to attend the reception due to the plaintiff's boycott. The parties were unable to reconcile and the plaintiff moved out of the marital residence several days later and never returned.
Based on the evidence and testimony, the court finds that the parties' marriage has broken down irretrievably, and that the plaintiff is primarily responsible for the breakdown.
 ORDERS
The court hereby enters the following, orders:
A. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown and each of the parties is declared to be single and unmarried.
B. The court enters the following, orders by way of alimony:
1. The plaintiff is to pay to the defendant the sum of $75.00 per week as periodic alimony.
That obligation shall continue until the earliest of the following events:
a. the death of either party;
b. remarriage of the defendant;
 c. cohabitation by the defendant, as that term is defined by statute;
d. April 7, 2004.
The provisions of Sections 46b-86 (a) and 46b-86 (b), Conn. General Statutes are applicable. Alimony shall be paid for the term specified and is non-modifiable as to its term except for terminating, upon the earliest of any of the above events. It is modifiable as to amount. In accordance with Section 46b-82, Conn. General Statutes, the court by way of security for the payment of alimony grants to the defendant a lien on the plaintiff's Waterbury Police Department pension. CT Page 8753
C. The court enters the following orders by way of assignment of property:
1. The marital residence located at 72 View Drive, Thomaston is to be listed for sale forthwith. The plaintiff shall receive forty (40%) percent of the net proceeds of the sale after the deduction of the all costs of sale, including commissions and taxes, and the defendant is to receive sixty (60%) percent of said proceeds.
2. The plaintiff is to retain all right title and interest in and to the real property located at Woodlake Point, Gasberg, Virginia and he shall be solely responsible for all costs associated with that property, including mortgage and taxes and shall hold the defendant harmless for such obligations.
3. The plaintiff is to retain all right, and interest in and to the two motor vehicles listed on his financial affidavit.
4. The defendant shall retain all right, title and interest in the 1995 Buick automobile listed on her financial affidavit.
5. The defendant is awarded all of the furnishings and contents of the marital residence with the exception of the plaintiffs personal belongings.
6. The parties are to share equally the following, personal property:
a. Eagle Federal Certificate of Deposit;
b. Webster Bank checking account;
c. Webster Bank stock;
d. United States savings bonds.
7. The plaintiff shall retain the Waterbury Police Credit Union account.
8. The defendant shall retain her interest in the two Lutheran Brotherhood annuities, the United Teacher Associates Insurance Co. annuity and the Connecticut Group Life Insurance policy listed on her financial affidavit. CT Page 8754
9. The defendant shall retain her interest in an to the various stocks (other than Webster Bank stock) listed on her financial affidavit.
10. The defendant shall retain the Northeast Utilities pension listed on her financial affidavit.
11. The City of Waterbury pension listed on the plaintiff's financial affidavit is ordered divided with seventy-five (75%) percent awarded to the plaintiff and the remaining twenty-five (25%) percent awarded to the defendant. The plaintiff is ordered to execute whatever documents are necessary in order to effectuate this transfer. Any taxes incurred as a result of the transfer to the defendant shall be the responsibility of the defendant.
12. The plaintiff is to cooperate with the defendant's efforts to obtain medical and hospital insurance through his policy under COBRA for the maximum period allowed by law. Any cost for such insurance shall be the sole responsibility of the defendant.
13. The parties are each to be responsible for the liabilities listed on their respective financial affidavits and for their own counsel fees.
By the court,
Joseph W. Doherty Judge